UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MERITAGE HOMES OF NEVADA, INC., | Case No. 2:12-cv-01425-RFB-PAL |
| Plaintiff, | ORDER |
| v. | |
| FNBN-RESCON I, LLC AND STEARNS BANK N.A., | |
| Defendants. | |

## I.  INTRODUCTION

Before this Court are FNBN-RESCON I, LLC and Stearns Bank N.A.'s ("Defendants") Motion to Dismiss, ECF No. 18, and Meritage Homes of Nevada's ("Plaintiff") Motion for Summary Judgment, ECF No. 22.  For the reasons described below, Defendants' Motion to Dismiss is granted, and Plaintiff's Motion for Summary Judgment is consequently denied as moot.

## II.  FACTUAL HISTORY

The Court finds that the following facts are undisputed.

### A.  The Initial Agreement Between Meritage, Inca And First National Bank

In January 2005, Meritage Homes of Nevada ("Meritage") and Inca Capital ("Inca") entered in an option agreement ("Option Agreement").  ECF No. 2-1.  This Option Agreement entitled Meritage to the option to purchase certain subdivided, residential lots in Clark County, Nevada (the "Property").  Id.  At that time, Meritage also entered into a construction agreement ("Construction Agreement") with Inca, later amended in May 2006 and again in April 2007,

whereby Meritage agreed to build certain improvements on the Property, and Inca agreed to compensate Meritage for the construction of these improvements.   ECF No. 2-3.   The Construction Agreement provided that, in the event of non-payment by Inca, Meritage could offset the purchase price of the lots by the amount of the missed payments.   Construction Agreement ¶ 15.

First National Bank of Arizona and its successor-in-interest First National Bank of Nevada ("First National Bank"), was Inca's primary lender in connection with the acquisition and development of the Property, and agreed to lend Inca up to about ten million dollars.   This loan was secured by a deed of trust on the Property.   Deed of Trust, Meritage Homes of Nevada Inc v FDIC et al, 2:09-cv-01950-PMP-RJJ, ECF No. 25-4.   First National Bank and Inca entered into an agreement assigning Inca's rights under the Option Agreement to First National Bank, through which First National Bank agreed to satisfy Inca's obligations to Meritage under the Option Agreement and Construction Agreement.   Assignment and Subordination of Option Agreement, ECF No. 2-4.   Subsequently, Meritage and First National Bank entered into a Consent to Assignment Subordination and Estoppel Certificate and Agreement.   ECF No. 2-5. Under these agreements (collectively, "First National Bank Agreements"), if First National Bank enforced the Deed of Trust or if it became owner of any part of the Property, and Meritage was not in default, then First National Bank would perform Inca's unfulfilled payment obligations to Meritage under the Option Agreement and Construction Agreement.   These agreements provided for Meritage's interest to survive foreclosure by First National Bank in the event that First National Bank foreclosed on the Property.   Assignment and Subordination of Option Agreement ¶ 2; Consent to Assignment Subordination and Estoppel Certificate and Agreement ¶ 2.

Pursuant to the Option Agreement and Construction Agreement, Meritage purchased and developed certain lots at the Property.   Between July 11, 2007 and June 3, 2008, Meritage submitted eight draws or invoices for payment to Inca for payments totaling $436,357.12 for completed construction work at the Property pursuant to the Construction Agreement.   Inca did not pay these invoices.   On June 20, 2008, Meritage notified First National Bank and Inca of the default.   Neither Inca nor First National Bank paid the invoices.

## B.  FDIC Creates RESCON And Sells Beneficial Interest To Stearns

On July 25, 2008, First National Bank was closed by the Office of the Comptroller and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver.  Through a series of interconnected agreements (collectively, the "Structured Transaction"), the FDIC transferred First National Bank assets (and obligations associated with those assets) to a few entities.  While these transactions follow a sequence in terms of the progression from the creation of an interest in the assets (primarily a portfolio of loans) to the final transfer of those assets to a private purchaser, the documents related to these transactions were signed within a day or two of each other in February 2009.  The progression occurred as follows.  First, the FDIC created FNBN-RESCON I, LLC ("RESCON"), a Delaware limited liability company.  Limited Liability Operating Agreement, ECF No. 2-8.  The FDIC was essentially the only signatory to this agreement (the same attorney signed for both FDIC and RESCON) and the FDIC owned all the interests in the company.  The FDIC then conveyed a number of First National Bank's assets— including the Inca loan—to RESCON and entered into an agreement regarding the servicing and management of the loan portfolio.[1]  Loan Contribution and Assignment Agreement, ECF No. 2-9, Participation and Servicing Agreement, ECF No. 2-10.  The FDIC—including the FDIC as

---

[1] At the Hearing of October 20, 2014, Defendants argued that no evidence supported the fact that the Inca loans had been transferred to RESCON.  Defendants provided no contrary evidence; they only claimed a lack of supporting evidence before the Court.  On motion for summary judgment, the party seeking the admission of documents bears the burden of proof to show their admissibility.  Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1051 (9th Cir. 2012).  In response at the hearing, Plaintiff argued that affidavits (in a companion case against the FDIC) state the Inca loan was sold to RESCON.  Declaration of Kelly Skalicky at ¶¶ 2–4, Meritage Homes of Nevada Inc v FDIC et al, 2:09-cv-01950-PMP-RJJ (No. 25-13).  Plaintiff further argued that the Trustees Deed Upon Sale, attached to its Motion for Summary Judgment as Exhibit 9, ECF No. 23-5 (and sworn to be a true and correct copy by Affidavit of Jennifer S. Lee ¶ 29, ECF No. 23), evidences the transfer of the Property to RESCON at the trustee sale.  Moreover, in their own opposition brief, Defendants acknowledge "[t]he Inca loan was just one of hundreds of loans purchased by RESCON from FDIC, as receiver for First National Bank."  Response to Motion for Summary Judgment 10–12, ECF No. 26.  Defendants actually support this statement with their own sworn affidavit which states, "RESCON purchased hundreds of loans from FDIC, as receiver for First National Bank of Nevada.  One of the loans included in the purchase is the loan at issue in this case between First National Bank of Arizona and Inca Inca Capital Fund 37, LLC ('Inca') for the purchase and development of property located in Clark County, Nevada."  Affidavit of Robin M. Cleary in Support of RESCON and Stearns' Opposition to Meritage's Motion for Summary Judgment ¶ 2, ECF No. 26 at 19.  In conclusion, for the purpose of the instant motions, Plaintiff has carried its burden of demonstrating the Inca loans were transferred to RESCON.

1     owner of the controlling interest in the limited liability company RESCON—was again

2     essentially the only signatory to these agreements.   The FDIC then as owner of and through

3     RESCON sold the beneficial interest in RESCON to Stearns SPV I, LLC through a public

4     auction.   Limited Liability Company Interest Sale and Assignment Agreement, ECF No. 2-11.

5     Stearns SPV I, LLC was created and owned by Stearns Bank, N.A. who guaranteed payment for

6     the beneficial interest in RESCON by Stearns SPV I, LLC.   Id.; Guaranty, ECF No. 2-12.   The

7     signatories to the Sale and Assignment Agreement were FDIC, RESCON and Stearns SPV I.

8     The sole signatory to the Guaranty was Stearns Bank.   Guaranty 10.   Stearns Bank and RESCON

9     reached an agreement about the servicing and management of RESCON and its assets and

10    obligations.   Servicing Agreement, ECF No. 2-13.

11        Importantly, with the exception of the Loan Contribution and Assignment Agreement, all

12    of these contracts contained an explicit "no third-party beneficiary" clause which disavowed the

13    formation of any third-party beneficiary rights under the contracts.

14

15                    **C.  Meritage Files Claim Then Sues FDIC**

16        In December 2008, Meritage learned of the FDIC's appointment as receiver of First

17    National Bank, and, on January 14, 2009, Meritage submitted a timely Proof of Claim to the

18    FDIC seeking payment of the $436,357.12 in invoices related to their improvements made to the

19    Property.    On August 13, 2009, the FDIC disallowed Meritage's claim because, "[t]he

20    documentation does not provide proof of a guarantee or promise to fulfill the obligations of the

21    borrower."  Notice of Disallowance of Claim, ECF No. 2-6.  Meritage was informed it had sixty

22    days to file a lawsuit or lose its claim forever.  Id.

23        Consequently, on October 8, 2009, Meritage filed suit, in a predecessor action to the

24    instant case, against Inca and the FDIC.  See Meritage Homes of Nevada Inc v FDIC et al, 2:09-

25    cv-01950-PMP-RJJ [hereinafter FDIC Case].   Meritage claimed Breach of Contract, Breach of

26    the Covenant of Good Faith and Fair Dealing, and Unjust Enrichment.  Compl. 4–7, FDIC Case

27    (No. 1).  Neither Inca nor the FDIC answered or otherwise responded to the Complaint, and on

28    April 22, 2010, a default was entered against both Inca and the FDIC.  Entry of Default, FDIC

Case (No. 13).  On July 2010, the court entered judgment against the FDIC and Inca.  Default Judgment, FDIC Case (No. 17).  Meritage was ultimately awarded the claim, interest, and costs.  See FDIC Case (Nos. 17, 18, 22, 24).  On October 14, 2010, the FDIC moved to set aside the default and vacate the judgment.  The court denied that motion on November 19, 2010.  Order, FDIC Case (No. 29).

After the denial of its motion to set aside the default, FDIC changed its initial determination and allowed Meritage's claim.  On April 18, 2011, the FDIC issued to Meritage a receivership certificate in the amount of $680,300.23.  Notice of Allowance of Claim, ECF No. 2-7.  On April 27, 2011, the FDIC filed a Satisfaction of Judgment with the Court.  FDIC Case (No. 33).  Claiming that the certificate, as opposed to an actual cash or monetary payment, did not satisfy the judgment, on November 23, 2011, Meritage filed a Motion to Strike Satisfaction of Judgment, Impose Cash Liability, or, in the Alternative, Issue Summons for Joint Obligors RESCON and Stearns.  FDIC Case (No. 39) ["Motion to Strike"].  The court, "finding that the Receivership Certificate on June 6, 1022 effectively satisfies the Judgment entered in this case," denied this Motion to Strike.  Order 1:19–20, FDIC Case (No. 44).  The court subsequently also denied Meritage's Motion for Reconsideration.  Order, FDIC Case (No. 48).  On March 26, 2012, Meritage appealed the court's order denying the Motion to Strike to the United States Court of Appeals for the Ninth Circuit.  Notice of Appeal, FDIC Case (No. 49).

On April 15, 2014, the Ninth Circuit filed its opinion in the FDIC Case, affirming the district court's decision.  Meritage, 753 F.3d 819, 821 (9th Cir. 2014).  Specifically, the Ninth Circuit held that the district court did not abuse its discretion in ruling that the receiver's certificate satisfied the judgment and that the district court did not commit clear error in declining to issue the summons to RESCON and Stearns.  Id. at 826.

## III.   PROCEDURAL HISTORY

On August 10, 2012, while the FDIC Case appeal was still pending, Meritage filed the present action against RESCON and Stearns Bank.  Compl. ECF No. 1.  In its Complaint, Meritage alleged six causes of action.  First, Meritage claims Breach of Contract by RESCON of

the First National Bank Agreements.   Compl. 10–11.   Meritage states that it had binding agreements with First National Bank and that RESCON assumed this contractual relationship pursuant to the FDIC's assignment of the Loan and acquisition of the Property by foreclosure.

Second, Meritage claims Breach of Contract by RESCON and Stearns pursuant to the six Structured Transaction agreements between the FDIC, RESCON, and Stearns: the Limited Liability Company Operating Agreement between RESCON and the FDIC, the Loan Contribution and Assignment Agreement between RESCON and the FDIC, the Participation and Servicing Agreement between RESCON and the FDIC, the Limited Liability Company Interest Sale and Assignment Agreement between Stearns SPV I, LLC and the FDIC, the Guaranty by Stearns Bank, and the Servicing Agreement between RESCON and Stearns Bank.   Compl. 12.

Third, Meritage claims Breach of the Covenant of Good Faith and Fair Dealing on the part of RESCON and Stearns.   Compl. 13.   Meritage claims that the Defendants breached this doctrine in the context of the First National Bank agreements.

Fourth, against Stearns Bank only, Meritage claims Breach of Guaranty for failure to pay the full amount of the Judgment in cash to Meritage, or reimburse Meritage for its work, as required by Meritage's agreements with First National Bank.   Compl. 13–14.

Fifth, Meritage seeks equitable relief against RESCON and Stearns Bank regarding Meritage's alleged security interest in and lien against the Property.   Compl. 14.

Finally, Meritage alleges Unjust Enrichment on the part of RESCON and Stearns Bank due to non-payment by First National Bank for Meritage's construction work.   Compl. 15–16. Meritage claims first the FDIC and then RESCON and Stearns Bank became liable for the unpaid construction work after foreclosure and have been enriched unjustly by the improvements to the Property.

On October 25, 2012, RESCON and Stearns Bank moved to dismiss all claims for lack of subject matter jurisdiction and failure to state a claim.   Mot. to Dismiss 1:2–6, ECF No. 18.   On December 21, 2012, Meritage moved for summary judgment on its contract claim, the first cause of action.   Mot. for Summ. J. 6:17–18, ECF No. 22.   On September 17, 2013, this Court stayed the current lawsuit and dismissed without prejudice the outstanding Motion to Dismiss and

1   Motion for Summary Judgment pending resolution of the appeal.  Order, ECF No. 32.  On May
2   13, 2014, these motions were reinstated.  Though the instant Motion to Dismiss was originally
3   filed on October 25, 2012—well before the appeal was decided—the parties opted not to file
4   supplemental briefing on the matter.  Mins. of Proceedings, ECF No. 39.  Both Plaintiff and
5   Defendants, however, filed Supplemental Briefs on the Motion for Summary Judgment.  ECF
6   Nos. 40, 41.

7           On October 20, 2014, this Court heard argument regarding Defendants' Motion to
8   Dismiss and Plaintiff's Motion for Summary Judgment.  During the hearing, the Court indicated
9   its intention to convert the Defendants' Motion to Dismiss into a Motion for Summary Judgment;
10  neither party objected.  At the hearing, parties were instructed to file with the Court briefs
11  addressing the issues raised by the Court at the hearing.  On October 27, both parties filed their
12  Second Supplemental Briefs. ECF Nos. 46, 47.  On October 30, Plaintiff filed an Objection to
13  the Defendants' Second Supplement Brief.[2]  ECF No. 48.

14

15  **IV.    LEGAL STANDARDS**

16          **A.  Motions To Dismiss**

17          An initial pleading must contain "a short and plain statement of the claim showing that
18  the pleader is entitled to relief" as well as a demand for relief.  Fed. R. Civ. P. 8(a).  The court
19  may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R.
20  Civ. P. 12(b)(6).  In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact
21  in the complaint are accepted as true and are construed in the light most favorable to the non-
22  moving party."  Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013)
23  (citations omitted).  "Generally, a district court may not consider any material beyond the
24  pleadings in ruling on a Rule 12(b)(6) motion.  However, material which is properly submitted as
25  part of the complaint may be considered."  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896

26  _____

27          [2] Meritage objected to Defendants' reinterpretation of the Inca Loan contract in their
    Second Supplement Brief and requested one of three remedies.   Objection to Second
28  Supplemental Brief 1:18–22.  The Court agrees that Defendants' assertions about the intent of
    the Inca Loan contract are inappropriate here and "[i]gnore[s] Rescon's assertions about the
    intent of the Inca Loan contract."  Id. at 1:23.

1    F.2d 1542, 1555 n.19 (9th Cir. 1989) (citations omitted).  For a complaint to survive dismissal,

2    the plaintiff must allege non-conclusory facts that, along with reasonable inferences from those

3    facts, are "plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret

4    Service, 572 F.3d 962, 969 (9th Cir. 2009).

5         Dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate if the complaint,

6    considered in its entirety, fails to allege facts on its face that are sufficient to establish subject

7    matter jurisdiction.  In re Dynamic Random Access Memory (DRAM) Antitrust Litigation, 546

8    F.3d 981, 984–85 (9th Cir. 2008).  Although the defendant is the moving party in a motion to

9    dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction.

10   As a result, the plaintiff bears the burden of proving that the case is properly in federal court.

11   McCauley v. Ford Motor Co., 264 F.3d 952, 957 (9th Cir. 2001) (citing McNutt v. General

12   Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).

13

14              **B.  Conversion Of Motion To Dismiss Into Motion For Summary Judgment**

15        Whenever district court looks beyond pleadings in evaluating a motion to dismiss under

16   Rule 12(b)(6), that motion must be treated as one for summary judgment.  Fed. R. Civ. P. 12(d).

17   Before summary judgment may be entered, all parties must be given notice of the motion and

18   opportunity to respond, which includes time for discovery necessary to develop facts justifying

19   opposition to the motion.  Id.  "In this circuit, notice is adequate if the party against whom

20   judgment is entered is 'fairly apprised' that the court will look beyond the pleadings, thereby

21   transforming the motion to dismiss into a motion for summary judgment."  Grove v. Mead Sch.

22   Dist. No. 354, 753 F.2d 1528, 1532–33 (9th Cir. 1985).  A represented party who submits

23   matters outside pleadings to the court and invites consideration of them has notice that the court

24   may use them to decide the motion originally filed as a motion to dismiss, requiring its

25   transformation into motion for summary judgment.  Id.

26        Here, in addition to their Motion to Dismiss, Defendants filed a Request for Judicial

27   Notice of thirteen documents not included in the Complaint.  ECF No. 19.  Plaintiff

28   acknowledged and in fact cited to these additional documents in its response.  Resp. to Mot. to

1    Dismiss 2 n.1, ECF No. 20.  Additionally, Plaintiff attached to its response another exhibit, an

2    appellate brief from the FDIC Case.  ECF No. 20-1.  Finally, at the October 20, 2014 Hearing,

3    both parties were apprised of the Court's intention to convert the instant Motion to Dismiss to a

4    motion for summary judgment and offered the opportunity to object; neither party objected.  The

5    parties therefore have notice that this Court will consider documents outside the Complaint and

6    as a consequence must transform the Motion to Dismiss into a motion for summary judgment.

7

8        ### C.  Summary Judgment

9            Summary judgment is appropriate when the pleadings, depositions, answers to

10   interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

11   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

12   law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When

13   considering the propriety of summary judgment, the court views all facts and draws all

14   inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch.

15   Dist., 658 F.3d 954, 960 (9th Cir. 2011). If the movant has carried its burden, the non-moving

16   party "must do more than simply show that there is some metaphysical doubt as to the material

17   facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the

18   nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007)

19   (alteration in original) (internal quotation marks omitted).

20

21   ## V.    DISCUSSION

22       ### A.  RESCON Did Not Breach The First National Bank Agreements

23           RESCON did not breach the First National Bank Agreements.  RESCON is not a party to

24   the First National Bank Agreements, and there is no evidence in this record that it ever agreed at

25   any other time to be bound by any obligations to Meritage.

26

27       #### 1.  Legal Standard

28           The Court evaluates the First National Bank Agreements under Nevada law.  The subject

- 9 -

1    of the agreements is the Property, located in Nevada, and the agreements include Nevada choice

2    of law provisions.  Option Agreement ¶ 23.13; Construction Agreement ¶ 16.1; Assignment and

3    Subordination of Option Agreement ¶ 16.

4         Under Nevada law, to show a breach of contract a plaintiff must show "(1) the existence

5    of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach."

6    Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013).  "Basic contract principles

7    require, for an enforceable contract, an offer and acceptance, meeting of the minds, and

8    consideration."  May v. Anderson, 121 Nev. 668, 672 (2005).   "A contract has a binding force

9    based upon the fact that it evidences a meeting of the minds of two parties in good faith."  Aerial

10   Lumber Co. v. United States, 239 F.2d 906, 907 (9th Cir. 1956).

11        Under Nevada law, a breach of contract claim may only be raised by the recipient of the

12   promise, and third-party beneficiaries are only entitled to seek remuneration if it can be clearly

13   discerned that the contracting parties intended to benefit the third party when the agreement was

14   formed—incidental beneficiaries lack the right to claim relief.  Wyatt v. Bowers, 103 Nev. 593,

15   595–96 (1987) (citing Lipshie v. Tracy Investment Co., 93 Nev. 370 (1977)).

16

17                    **2.  RESCON Did Not Ever Agree To Be Obligated To Meritage**

18        In its first cause of action, Meritage argues that RESCON has breached the First National

19   Bank Agreements.  However, it is not possible for RESCON to breach the First National Bank

20   Agreements, because it is not a party to these agreements and because it never agreed to be

21   bound by these agreements.

22        It is undisputed that RESCON is not a party to the First National Bank Agreements, and

23   consequently is not in privity with Meritage.

24        RESCON also never assumed the liability of First National Bank regarding the Property

25   to Meritage.  This finding arises from a review of the process by which the FDIC became the

26   receiver for First National Bank, assumed its liabilities and then disposed of some of its assets.

27   First, the FDIC, as receiver, steps into the shoes of the failed financial institution, assuming all

28   the rights and obligations of the defunct bank.  Sharpe v. F.D.I.C., 126 F.3d 1147, 1152 (9th Cir.

1    1997) (internal quotation marks omitted); <u>F.D.I.C. v. O'Melveny & Myers</u>, 61 F.3d 17, 19 (9th

2    Cir. 1995).  When the FDIC enters into the receivership for a failed bank, it succeeds the bank to

3    "all rights, titles, powers, and privileges" of the bank. 12 U.S.C. § 1821(d)(2)(A)(i).  As receiver,

4    the FDIC "shall pay all valid obligations of the insured depository institution."   12 U.S.C. §

5    1821(d)(2)(H).  The actions of the failed bank are considered the actions of the FDIC.  <u>Sharpe</u>,

6    126 F.3d at 1152.  In evaluating the Defendants' Motion for Summary Judgment (transformed

7    Motion to Dismiss), the Court makes reasonable inferences in favor of the Meritage, and

8    consequently must infer that the FDIC assumed First National Bank's contractual obligation.

9        Next, the Court considers whether the FDIC passed—and whether RESCON assumed—

10   any contractual liability of the First National Bank Agreements.  The FDIC has the "power to

11   take all actions necessary to resolve the problems posed by a financial institution in default."

12   <u>Sahni v. Am. Diversified Partners</u>, 83 F.3d 1054, 1058 (9th Cir. 1996).  Once the FDIC takes on

13   the assets and liabilities of a failed bank, the FDIC may pass on some or all of those assets and

14   liabilities to other entities.  Which assets and liabilities the FDIC passes on is a matter of the

15   terms of the contract between the FDIC and the receiving entity.  <u>See</u> <u>West Park Associates v.</u>

16   <u>Butterfield Sav. & Loan Ass'n</u>, 60 F.3d 1452, 1458–59 (9th Cir. 1995); <u>see also</u> <u>Kennedy v.</u>

17   <u>Mainland Sav. Ass'n</u>, 41 F.3d 986, 990–91 (5th Cir. 1994) (citations omitted) (internal quotation

18   marks omitted) ("The purchaser of an asset from a failed institution is not liable for the conduct

19   of the receiver or [failed] institution unless the liability is transferred and assumed.  The federal

20   receiver . . .  has the power to sell an asset . . . while retaining a related liability, and no liability

21   is transferred to an assuming institution . . . absent an express transfer.").

22       Here, there is no evidence that the FDIC agreed to pass the Meritage liability to

23   RESCON.  More importantly, there is no evidence that RESCON ever agreed to assume any

24   liability to Meritage as it relates to the Property.  As discussed above, the Structured Transaction

25   contracts between the FDIC and RESCON make no mention of Meritage or the First National

26   Bank Agreements.  The Plaintiff has offered no evidence to suggest that RESCON ever agreed to

27   fulfill the unpaid obligation to Meritage.  For an entity to be bound by the terms of a contract,

28   that entity must have agreed, i.e. there must have been a "meeting of the minds," regarding such

1    terms.  There was no such meeting of the minds as to any subsequent agreement by RESCON to

2    pay Meritage for improvements to the Property.

3

4                    **3.   Meritage's Claim Is Against The FDIC Not RESCON**

5             While Meritage has asserted a claim in this case against RESCON for the breach of the

6    Frist National Bank agreements, any claim for such a breach would properly be brought against

7    the FDIC and not RESCON.  Meritage argues that the FDIC did not properly repudiate the First

8    National Bank Agreements, yet it does not explain how this failure creates an enforceable debt

9    obligation for RESCON.  For example, in West Park, the Ninth Circuit held that the FDIC could

10   validly transfer all of a failed bank's assets free of any liability to the bank's shareholders.  60

11   F.3d at 1458.  In West Park, the Ninth Circuit explained that, because the FDIC assumed the

12   obligations of the failed bank and expressly limited liability when it transferred the failed bank's

13   assets, claims would need to be brought against the FDIC as receiver and not against the

14   receiving entity.  Id.  Importantly, this ability to transfer away assets free of liabilities is not

15   without restrictions.  The Financial Institutions Reform, Recovery and Enforcement Act of 1989

16   ("FIRREA") "does not authorize the breach of contracts, nor does it require the FDIC to record

17   all instruments of conveyance in its possession at the time it is appointed receiver.  FIRREA also

18   does not preempt state law so as to abrogate state law contract rights."  Sharpe, 126 F.3d at 1155.

19   The FDIC **can** escape contractual obligations, but it must do so through the statutorily prescribed

20   procedures: "Section 1821(e) allows the FDIC to disaffirm or repudiate any contract it deems

21   burdensome and pay only compensatory damages."  Id. at 1155, 57 ("Had the FDIC followed the

22   § 1821(e) procedure in disaffirming the settlement agreement with the Sharpes, this would have

23   been a very different case.")  The FDIC is not free to "breach any pre-receivership contract, keep

24   the benefit of the bargain, and then escape the consequences by hiding behind the FIRREA

25   claims process."  Id. at 1156.

26             In this case, it may be that the FDIC did not follow appropriate statutory procedures or

27   otherwise failed to correctly handle the First National Bank Agreements in terms of the Meritage

28   liability.  This Court need not resolve this issue, however, since the proper remedy for such a

1   breach or failure would be an action against FDIC: a lawsuit which has actually already been

2   brought and resolved in this District.   FDIC Case; Meritage 753 F.3d at 821–22; see factual

3   history supra Section II.C.   For the purposes of this case, however, Meritage fails to demonstrate

4   how and why RESCON should be legally responsible for FDIC's alleged failure or breach.

5   None of the contracts between FDIC and RESCON in this case contain language conveying an

6   obligation for such a failure or breach to RESCON.   Moreover, Meritage acknowledged at the

7   October 20, 2014, hearing that it had no evidence that RESCON or Stearns ever agreed to accept

8   any obligation due to Meritage from the FDIC.

9          Meritage cannot establish RESCON's breach of the First National Bank Agreements

10   because Mertiage cannot demonstrate that RESCON ever agreed to be bound by the terms of the

11   First National Bank Agreements or assume any obligation to Meritage.

12

13          **B. No Breach Of Contract By RESCON And Stearns Bank Of The Six**

14                **Structured Transaction Agreements**

15          Meritage lacks standing to enforce any of the Structured Transaction contracts entered

16   into by FDIC, RESCON, Stearns SPV I, LLC, and Stearns Bank N.A. because it was not a party

17   to these contracts and is not a third-party beneficiary with enforceable rights under these

18   contracts.   Moreover, these contracts did not create an obligation to Meritage which the

19   Defendants had to perform.

20

21          **1. Federal Law And Nevada Law Apply To The Structured Transaction**

22                **Agreements**

23          "Federal law governs the interpretation of contracts entered into pursuant to federal law

24   and to which the government is a party," except in limited circumstances "such as when the

25   United States is not a party, or when the direct interests and obligations of the government are

26   not in question . . . ."   Smith v. Cent. Ariz. Water Conservation Dist., 418 F.3d 1028, 1034 (9th

27   Cir. 2005).   Here, four of the six Structured Transaction contracts—the Limited Liability

28   Company Operating Agreement, Loan Contribution and Assignment Agreement, Participation

- 13 -

1   and Servicing Agreement, Limited Liability Company Interest Sale and Assignment

2   Agreement—include the FDIC, which is a federal agency, as a party.  Furthermore, these

3   agreements were entered into pursuant to FIRREA, a federal statute which "implicates uniquely

4   federal concerns in that it governs resolution of the affairs of failed banks."  GECCMC 2005-C1

5   Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n, 671 F.3d 1027, 1032 (9th

6   Cir. 2012).  Therefore, New York and Delaware choice of law provisions notwithstanding,

7   federal law governs these four contracts.

8          The remaining two Structured Transaction agreements—the Guaranty by Stearns Bank

9   N.A., and the Servicing Agreement between RESCON and Stearns Bank N.A.—are inextricably

10  intertwined with the other four Structured Transaction agreements, referencing these other four

11  agreements for definitions and even being explicitly required by the four.  See, e.g., Limited

12  Liability Company Interest Sale and Assignment Agreement § 5 ("Contemporaneously with the

13  execution and delivery of this Agreement, [Stearns SPV I, LLC] shall cause to be delivered to

14  [FDIC] and [RESCON] a guaranty . . . duly executed by the Guarantor named therein.");

15  Guaranty 1 ("Capitalized terms used but not defined herein have the meanings assigned to them

16  in the Participation and Servicing Agreement . . . between [RESCON] and the Federal Deposit

17  Insurance Corporation").  However, these two agreements do not include the FDIC as a party.

18         Both of these two agreements in which the FDIC is not explicitly a party or signatory

19  include choice of law provisions electing New York law.  Guaranty § 6.6; Servicing Agreement

20  § 10.01, ECF No. 2-13.  "A federal court sitting in diversity ordinarily must follow the choice-of-

21  law rules of the State in which it sits."  Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of

22  Texas, 134 S. Ct. 568, 582 (2013). Nevada generally accepts choice of law provisions in

23  contracts.

> So long as the parties acted in good faith and not to evade the law of the real situs of the contract, Nevada's choice-of-law principles permit parties within broad limits to choose the law that will determine the validity and effect of their contract. The situs fixed by the agreement, however, must have a substantial relation with the transaction, and the agreement must not be contrary to the public policy of the forum or other interested state.

28  Progressive Gulf Ins. Co. v. Faehnrich, 752 F.3d 746, 751 (9th Cir. 2014) (internal quotations

- 14 -

marks omitted) (internal citations omitted).  There is no indication that the parties selected New York law in bad faith.  However, there is also no indication that New York has a substantial (or even any) relation with the transaction.

Under Nevada choice of law rules, the substantial relationship test governs contract claims.  Consol. Generator-Nevada, Inc. v. Cummins Engine Co., 114 Nev. 1304, 1307 (1998). The failed bank was First National Bank of Nevada, and Meritage is based in Arizona and does business in Nevada.  RESCON and Stearns SPV I, LLC are both incorporated under Delaware law, Stearns Bank is based in Minnesota, and the Property is located in Nevada.  As there is no substantial relation between New York and the transaction, the choice of law provision is not given effect.  As a consequence, to the extent federal law does not govern the Structured Transaction, the Court will apply Nevada law given the location of the disputed Property and parties' connection to the forum state.

### 2. Legal Requirements To Have Standing To Sue For Breach Of Contract

While the choice of law appears to have little impact on the analysis and its outcome here, as the contract law principles relevant here are similar under federal, Nevada, and New York law—with federal law being slightly more restrictive in terms of the creation of third-party beneficiary rights—the Court nonetheless reviews the law of each below.

Under federal common law, "only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach."  GECCMC, 671 F.3d at 1033; accord Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999), opinion amended on denial of reh'g, 203 F.3d 1175 (9th Cir. 2000).

Nevada applies the same rule.  A breach of contract claim may only be raised by the recipient of the promise, and third-party beneficiaries are only entitled to seek remuneration if it can be clearly discerned that the contracting parties intended to benefit the third party when the agreement was formed—incidental beneficiaries lack the right to claim relief.  Wyatt v. Bowers,

103 Nev. 593, 595-96 (1987) (citing <u>Lipshie v. Tracy Investment Co.</u>, 93 Nev. 370 (1977)).

New York law takes a similar approach to standing and third parties seeking to enforce their rights under a contract. <u>Hillside Metro Associates, LLC v. JPMorgan Chase Bank, Nat. Ass'n</u>, 747 F.3d 44, 49 (2d Cir. 2014) ("It is ancient law in New York . . . that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed.").

### 3.   Meritage Is Not A Party Or Third-Party Beneficiary To The Structured Transaction Contracts

It is undisputed that no contract exists directly between Meritage and RESCON or between Meritage and Stearns Bank N.A.. Also, importantly, none of the Structured Transaction contracts name Meritage or reference the Property specifically. Thus, Meritage may only enforce the Structured Transaction contracts at issue against RESCON or Stearns as a third-party beneficiary.

Meritage is not a third-party beneficiary under federal law. As noted above, under federal law, before a third party can recover under a contract, it must show that the contract was made for its direct benefit and that it is an intended beneficiary of the contract. "The fact that a third party may incidentally benefit under the contract does not confer on him the right to sue . . . . This distinguishes intended beneficiaries to a contract whose rights are judicially enforceable from incidental beneficiaries whose rights are not judicially enforceable." <u>GECCMC</u>, 671 F.3d at 1033. Absent a clear intent to the contrary, parties benefiting from government contracts are generally assumed to be incidental beneficiaries. <u>Id.</u> The Ninth Circuit has explained:

> This "clear intent" hurdle is a high one. It is not satisfied by a contract's recitation of interested constituencies, "[v]ague, hortatory pronouncements," "statement[s] of purpose," "explicit reference to a third party," or even a showing that the contract "operates to the [third parties'] benefit and was entered into with [them] 'in mind,'". Rather, we examine the "precise language of the contract for a 'clear intent' to rebut the presumption that the [third parties] are merely incidental beneficiaries."

<u>Id.</u> at 1033-34 (citations omitted).

The Ninth Circuit's decision in <u>GECCMC</u>, decided after the present motions were

1   briefed, is illustrative.  There, Washington Mutual closed as a failed bank and entered FDIC

2   receivership.  GECCMC, 671 F.3d at 1029.  Many of the failed bank's assets and liabilities were

3   then transferred to Chase.  GE, as landlord, then alleged that Chase assumed two leases, for

4   which Washington Mutual was tenant, and was liable for unpaid rent.  Chase's assumption was

5   subject to a contractual limitation on third-party beneficiaries.  Id. at 1030-31.  Chase declined

6   assignment of the lease, and GE filed first an administrative claim, which was denied, and

7   second a federal lawsuit.  Id. at 1031.  The Ninth Circuit held that neither language in which

8   "Chase 'expressly assumes ... all of the liabilities of [WaMu],'" nor a section of the purchase and

9   assumption agreement stating "the Assuming Bank [i.e., Chase] expressly assumes at Book

10   Value ... and agrees to pay, perform, and discharge, all of the liabilities of the Failed Bank which

11   are reflected on the Books and Records of the Failed Bank as of Bank Closing" carved out

12   enforceable rights or demonstrated "clear intent."    GECCMC, 671 F.3d at 1031, 1035

13   (alterations in original).

14          Here, Meritage is not a party to any of the Structured Transaction contracts between the

15   FDIC, RESCON, and/or Stearns Bank.  There is no mention of Meritage in any of the Structured

16   Transaction agreements between the FDIC and the other parties, and none of the parties made

17   any promise in these contracts that Meritage would receive any benefit from them.   The

18   Structured Transaction contracts do not reference the specific Property in dispute here or the

19   transfer of any obligations related to the Property.  Indeed, it is not clear that Meritage is even an

20   incidental beneficiary to the Structured Transaction contracts.  Meritage is clearly, however, not

21   an intended third-party beneficiary and thus cannot seek to enforce whatever rights it believes it

22   has through a breach of contract claim.

23          Moreover, in addition to not naming Meritage or referencing the Property, the

24   Participation and Servicing Agreement between RESCON and the FDIC—which served as the

25   foundational and necessary contracts to the contracts that Meritage is seeking to enforce—

26   indicates explicitly that no third-party beneficiary rights are being created under the contract:

27          No Third Party Beneficiaries. This Agreement is made for the sole benefit
           of Participant and the Company and their respective successors and
28          permitted assigns, and no other Person or Persons (including Borrowers or
           any co-lender or other Person with any interest in or liability under any of

the Loans) shall have any rights or remedies under or by reason of this Agreement.

Participation and Servicing Agreement § 19.06.  As RESCON explicitly had no obligation to Meritage (or any other third party), no obligation existed that RESCON could have passed on to Stearns.  Indeed, as noted above, five of the six contracts in the Structured Transactions—including all four contracts to which the FDIC is a party—also contain various clauses rejecting the creation of third-party beneficiary rights in any third party not explicitly named for that purpose.  Limited Liability Operating Agreement, ECF No. § 12.4; Loan Contribution and Assignment Agreement § 8.4; Participation and Servicing Agreement § 19.06; Limited Liability Company Interest Sale and Assignment Agreement § 9; Servicing Agreement § 11.09; see also Guaranty §§ 2(a)(i), 6.10 (listing who specifically is a third-party beneficiary without explicitly disclaiming all others).

Looking beyond the four Structured Transaction agreements to which the FDIC is a party, the Guaranty by Stearns and the Servicing Agreement between RESCON and Stearns, considered under of Nevada law, also do not support Meritage as a third-party beneficiary. Under Nevada law, there also must be a clear intent in a contract to benefit a third party before this third party may seek to enforce rights under the respective contract.  See Wyatt, 103 Nev. at 595-96; Lipshie v. Tracy Inv. Co., 93 Nev. at 379 (citations omitted) ("To obtain [third-party beneficiary] status, there must clearly appear a promissory intent to benefit the third party, and ultimately it must be shown that the third party's reliance thereon is foreseeable.").

As with all the other Structured Transaction agreements, there is no mention of Meritage in either the Guaranty or Servicing Agreement.  There is no specific reference to the disputed Property.  There is no explicit or specific language that creates a third-party beneficiary right for Meritage.  Again, as noted above, it is not clear that Meritage is even an incidental beneficiary to these contracts.  It is clear, however, that under Nevada law (or even federal or New York law) Meritage is not a third-party beneficiary under these contracts.

Because Meritage is neither a party nor an intended third-party beneficiary of any of the Structured Transaction contracts, Meritage has no enforceable rights under these contracts

against RESCON or Stearns Bank N.A.. As a consequence, Meritage's second and fourth causes of action must fail.

### C. No Breach Of The Covenant Of Good Faith And Fair Dealing By The Defendants

Because Meritage does not have standing to sue under the Structured Transaction agreements or the First National Bank agreements, its claim based on the implied covenant of good faith and fair dealing must also necessarily fail.  In Nevada, "every contract imposes upon the contracting parties the duty of good faith and fair dealing" and "[t]he duty not to act in bad faith or deal unfairly thus becomes a part of the contract, and, as with any other element of the contract, the remedy for its breach generally is on the contract itself."  Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 109 Nev. 1043, 1046 (1993) (alteration in original) (emphasis added) (quoting Wagenseller v. Scottsdale Mem'l Hosp., 147 Ariz. 370, 383 (1985)).  Here, Meritage is neither a party nor a third-party beneficiary to the Structured Transaction agreements or the First National Bank agreements. Neither of the Defendants ever entered into a contract with Meritage or agreed to be bound to Meritage under any of the contracts or agreements in this case. Meritage thus cannot assert a breach of any duty related to these contracts as it has no rights under them.  Therefore, the third cause of action fails as a matter of law.

### D. Fifth Cause Of Action: Equitable Relief

In its fifth cause of action, Meritage asks the court to determine as a matter of equity its rights and Defendants' obligations with regards to the Property.  Specifically, Meritage asks this Court to find that the First National Bank agreements created a security interest in the Property requiring any entity taking title to the Property to fulfill First National Bank's obligation to Meritage.  The Court finds no such security interest existed and declines to exercise its equity jurisdiction on behalf of Meritage.

First, Meritage, in its arguments on appeal in the predecessor case to this one and subsequent to the filing of its Complaint in this case, renounced its argument that it had a

security interest that attached to the Property itself.  <u>Meritage</u>, 753 F.3d at 825 ("counsel for Meritage flatly asserted that Meritage 'do[es] not claim that we had a security interest.'" (alteration in original)).  And at the October 20, 2014 hearing, Plaintiff's counsel noted that, at best, the First National Bank Agreements created only a form of contractual security interest, but counsel further acknowledged that this interest did not attach to the Property like a deed of trust or some other device encumbering the Property.

Second, more importantly, the record does not indicate that First National Bank ever intended to encumber the Property such that any entity taking title would have to satisfy its obligation to Meritage.  No deed of trust was ever filed relating to First National Bank's obligation to Meritage.  Rather, First National Bank did agree **contractually** that its obligation to Meritage would survive if First National Bank, **itself**, foreclosed on the Property.  Meritage has presented no evidence to support its claim that First National Bank intended to encumber the Property beyond this.

This Court finds there is no basis in equity to require the Defendants to satisfy First National Bank's obligation to Meritage.

### E.  Sixth Cause Of Action: Unjust Enrichment

Unjust enrichment is a quasi-contractual claim applicable when no actual contract exists between the parties.  As an implied contract, there is no recorded choice of law provision.  Under Nevada law, the substantial relationship test governs choice of law in contract claims.  <u>Consol. Generator-Nevada</u>, 114 Nev. at 1307.  Because the Property exists solely in Nevada and the important events in the instant matter occurred in Nevada, Nevada has the most substantial relationship to the implied contract.  The Court will therefore apply Nevada law.

"[T]he essential elements of unjust enrichment are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit."  <u>Topaz Mut. Co. v. Marsh</u>, 108 Nev. 845, 856 (1992) (internal quotation marks omitted); <u>see</u> <u>Certified Fire Prot. Inc. v. Precision Constr.</u>, 283 P.3d 250, 257 (2012).

1       Defendants argue that unjust enrichment is unavailable when there is an express, written

2  contract.  Mot. to Dismiss 15:12–15.  This is a correct statement of law.  See Leasepartners Corp.

3  v. Robert L. Brooks Trust Dated Nov. 12, 1975, 113 Nev. 747, 755 (1997) ("An action based on

4  a theory of unjust enrichment is not available when there is an express, written contract, because

5  no agreement can be implied when there is an express agreement.")  However, Defendants'

6  argument overlooks the possibility that Meritage may plead unjust enrichment in the alternative

7  by assuming the absence of a contract between Meritage and the Defendants.  The Court also has

8  found that no contract existed between Meritage and the Defendants.

9       As the Court has already found that no contract existed between Meritage and

10  Defendants, the Court now considers whether Meritage's claim can establish a basis for unjust

11  enrichment.  The Court finds that it cannot.  Meritage cannot demonstrate it conferred any

12  benefit on the Defendants.  The improvements to the Property were made before RESCON and

13  Stearns took possession of the Property.  Through valid contracts, RESCON and then Stearns

14  took lawful possession of the Property with the improvements already on it.  Meritage conferred

15  a benefit on Inca and First National Bank but not the Defendants.  Indeed, Stearns paid for the

16  Property as part of a package of First National Bank's assets purchased from the FDIC.  Stearns

17  cannot be unjustly enriched by something attached to property for which it paid.

18       RESCON and Stearns Bank N.A. were not unjustly enriched by Meritage's

19  improvements to the Property before they came into lawful possession of the Property.

20  Meritage's sixth cause of action for unjust enrichment fails.

21

22       **F.  FIRREA Blocks Meritage's Claims**

23       This Court also finds that it lacks the jurisdiction to hear **any** of Meritage's claims

24  because the Court's jurisdiction is limited by FIRREA.  This federal statute bars jurisdiction of

25  this Court over Meritage's claims.

26       FIRREA limits the jurisdiction of courts, specifically saying that "no court shall have

27  jurisdiction over . . . (ii) any claim relating to any act or omission of such institution or the

28  Corporation as receiver."  12 U.S.C. § 1821(d)(13)(D).  However, "[c]laims of independent

misconduct by an institution that purchases a failed bank are not covered by FIRREA's exhaustion requirement." <u>Benson v. JPMorgan Chase Bank, N.A.</u>, 673 F.3d 1207, 1215 (9th Cir. 2012).  This statutory scheme is meant to allow for the orderly and expeditious disposal of a failed institutions assets to other entities without these other entities having to worry about prior contractual obligations of the failed institution.  <u>GECCMC</u>, 671 F.3d at 1035.  As the Ninth Circuit has explained, allowing third parties to enforce rights under contracts with the failed institution against entities taking possession of the failed institution's assets would "impede FIRREA's mandate to preserve and conserve the assets and property of the Failed Bank by opening the door to suits from any number of third parties who might claim a benefit" from a contract with the failed institution.  <u>Id.</u>  (citations omitted) (internal quotation marks omitted).

The Court lacks jurisdiction to hear Meritage's claims because these claims arise out of the actions of either First National Bank or the FDIC in its role as receiver of First National Bank.  12 U.S.C. § 1821(d)(13)(D)(ii).  First National Bank breached its agreements with Meritage when it failed to pay for the improvements on the property.  The FDIC may have breached its duty to Meritage by not properly repudiating the First National Bank Agreements pursuant to the statutory procedure under FIRREA, or the FDIC may have, as receiver, breached the First National Bank Agreements.  RESCON and Stearns, however, did not engage in any misconduct subsequent to the FDIC's transfer of assets to them.  They had no duty or obligation to pay Meritage because Meritage was not a third-party beneficiary of the FDIC contracts which transferred the assets, including the Property, to RESCON and then to Stearns.  As Meritage's claims derive from the "act[s] or omission[s]" of First National Bank or the FDIC as receiver, this Court has no jurisdiction to hear them.  <u>Id.</u>

//

//

//

//

//

## VI.   CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendants' Motion to Dismiss, ECF No. 18 IS GRANTED.   IT IS FURTHER OREDERD that Plaintiff's Motion for Summary Judgment, ECF No. 22, is DENIED as moot.   The Clerk of Court is instructed to close this case.

DATED this 4th day of February, 2015.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE